FRITZSCHE *et al.* *v.* MAGONE, Collector.

*(Circuit Court, S. D. New York. October 22, 1889.)*

CUSTOMS DUTIES—CLASSIFICATION—FLORAL EXTRACTS.

Since the passage of the tariff act of March 3, 1883, (22 U. S. St. at Large, c. 121, p. 488,) floral extracts, which are articles composed of about 95 per cent of alcohol and 5 per cent. of sediment, and used in the manufacture of perfumery, are not dutiable at the rate of $2 per gallon and 50 per centum *ad valorem* as "alcoholic perfumery," under the subdivision of "Alcoholic Preparations," which provides for such perfumery, contained in Schedule A of said tariff act, but are dutiable at the rate of $2 per gallon for the alcohol contained, and 25 per centum *ad valorem*, as "alcoholic compounds not otherwise specially enumerated or provided for" under the subdivision of "Alcoholic Preparations," which provides for such compounds contained in said Schedule A.

At Law. Action to recover back customs duties. The plaintiffs, on January 4 and April 27, 1888, made two importations from France into the port of New York of floral extracts,—jasmin and rose. These floral extracts were classified by the defendant, as collector of customs at said port, as "Alcoholic Perfumery," under the subdivision of "Alcoholic Preparations," which provides for "alcoholic perfumery," contained in Schedule A of the tariff act of March 3, 1883, (T. I. new, par. 100,) and duty thereon, pursuant to such provision, was exacted of the plaintiffs by him, as said collector, at the rate of $2 per gallon and 50 per cent. *ad valorem*. Against this classification and exaction the plaintiffs made sufficient and seasonable protests, claiming therein that these floral ex-

tracts were "alcoholic compounds," dutiable at the rate of $2 per gallon for the alcohol contained and 25 per centum *ad valorem* under the subdivision of "Alcoholic Preparations," which provides for "alcoholic compounds not otherwise specifically enumerated or provided for,"contained in said Schedule A, (T. I. new, par. 103.)   Thereafter the plaintiffs, within the time required by law, duly made appeals to the secretary of the treasury, and, within 90 days after adverse decisions were made thereon by him, brought this suit to recover the difference in duties at the rate exacted by the defendant as said collector, and at the rate claimed by them in their protests.   Upon the trial it appeared that these floral extracts were colored liquids, the jasmin being of a wine color, and the rose of an olive green color; were composed of about 95 per cent. of alcohol and 5 per cent. of sediment; were somewhat greasy or oily to the touch, and were of a heavy fragrant odor; and that, when applied to a linen handkerchief, etc., they both left a greasy or oily stain upon it. From the plaintiffs' testimony it appeared that at and prior to the passage of the aforesaid act of 1883 the term "perfumery" was a trade term, having a more restricted meaning than the dictionary definition, and, in trade and commerce of this country, meant the finished products manufactured from various raw materials differently combined, and made ready for use as perfumery by the consumer; that in the manufacture of such finished products the various raw materials used had to be reduced in strength and rendered volatile, so that the heavy smell of them, as it was called in the trade, was made to disappear; that their different smells and odors had to be compounded in such a way as to produce imitations of nature; and that the natural coloring matter in these raw materials had to be treated, and the oil or grease in any of them removed, so that the finished products would not stain the handkerchief or other article to which they were applied; that these floral extracts were not, at and prior to the passage of the aforesaid act of 1883, in trade and commerce of this country, perfumery, or included in the term "perfumery;" that they have always been in such trade and commerce regarded as, and used as, one of the materials employed in the manufacture of perfumery.   From the defendant's testimony it appeared that, at and prior to the passage of the aforesaid act of 1883, in trade and commerce of this country perfumery was anything which gave a pleasant odor, and that floral extracts like those in suit were so known as, and included in the term, "crude perfumery."

*Comstock & Brown,* for plaintiffs.

*Edward Mitchell,* U. S. Atty., and *Thomas Greenwood,* Asst. U. S. Atty., for defendant.

LACOMBE, J., (*charging jury.*)   These articles are compounds of alcohol.   As such they were properly dutiable as alcoholic compounds, which is the plaintiffs' contention, unless they are otherwise specially enumerated in the tariff act.   The government contends that they are otherwise specially enumerated by the term "alcoholic perfumery." The definition of the term "perfumery," as given to us from the dictionary

which was used here, is unsatisfactory. The word "perfumery" is there defined by a reference only,—that is, "Perfumery. Perfumes in general;" and, when "Perfume" is turned to, we find that the only definition given is, "A substance that emits a scent or odor, which affects agreeably the organs of smelling." Of course new-mown hay is within this definition, but, while in one sense it may be said to be a perfume, yet the meaning which we attach to the word "perfumery" in daily life is much more restricted. The word, as generally used, means not only a substance which emits a scent or odor, but also one which is handled, bought and sold, and used for the purpose of obtaining from it such odor whenever required. But of course with the dictionary definition of the word we need not particularly concern ourselves. This tariff act is concerned with the trade and commerce of the country, and it is therefore proper to turn to that trade and commerce for the definition of words which are used in the act. Two definitions have been proffered here as to what the word "perfumery" means in the trade. One witness, called by the government describes it as "anything which gives a pleasant odor;" the articles in suit he calls crude perfumery. That is the claim of the government. The witnesses on the other side say that in trade the word "perfumery" is confined to the finished product that can be used by the consumer, and that until it is put into such a condition that the consumer into whose hands it finally comes can use it for the purpose for which perfumery is used by individuals, it is not "perfumery," as known in the trade.

It is for you to determine, in the first place, which of those definitions is established by the testimony in this case to be the trade definition. When you reach a conclusion upon that point, you will next say whether or not these particular articles fall within that definition.

Verdict for plaintiffs.